## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 1:19-CR-00011 |
| v. | (Chief Judge Brann) |
| AKEE LY, | |
| Defendant. | |

### MEMORANDUM OPINION

### MAY 17, 2023

## I.    BACKGROUND

In 2019, Akee Ly was indicted on charges of possession with the intent to distribute cocaine and marijuana, in violation of 21 U.S.C. § 841(a)(1), possession of firearms in furtherance of drug trafficking, in violation of 18 U.S.C. § 924(c)(1)(A), and being a felon in possession of firearms, in violation of 18 U.S.C. § 922(g).[1] Ly thereafter pled guilty, pursuant to a written plea agreement, to possession of firearms in furtherance of drug trafficking.[2]

The plea agreement noted that the offense carried a mandatory minimum term of five years' imprisonment, and a maximum term of life imprisonment.[3] It further stated that Ly "agree[d] that any legal and factual issues relating to the application of the Federal Sentencing Guidelines to the defendant's conduct, including facts to

---

[1]   Doc. 19.
[2]   Docs. 54, 63.
[3]   Doc. 54 at 1-2.

support any specific offense characteristic or other enhancement or adjustment and the appropriate sentence…" would be determined by the Court.[4] The plea agreement stated that Ly understood that the agreement and any recommendations contained therein were not binding on the Court, and that the Court could impose a sentence up to the statutory maximum sentence of life imprisonment.[5] The plea agreement further provided that Ly could not withdraw his guilty plea due to dissatisfaction with the Court's rulings or the sentence imposed.[6]

Additionally, the plea agreement contained a waiver of Ly's appellate rights, wherein he agreed:

> The defendant is aware that Title 28, United States Code, Section 1291 affords a defendant the right to appeal a judgment of conviction and sentence; and that Title 18, United States Code, Section 3742(a) affords a defendant the right to appeal the sentence imposed. Acknowledging all of this, the defendant knowingly waives the right to appeal the conviction and sentence. This waiver includes any and all possible grounds for appeal, whether constitutional or non-constitutional, including, but not limited to, the manner in which that sentence was determined in light of *United States v. Booker*, 543 U.S. 220 (2005). The defendant further acknowledges that this appeal waiver is binding only upon the defendant and that the United States retains its right to appeal in this case.[7]

At the change of plea hearing, this Court again reiterated that the maximum sentence that could be imposed was life imprisonment, and that the offense carried

---

[4]   *Id.* at 7.
[5]   *Id.* at 23-24.
[6]   *Id.* at 22, 24.
[7]   *Id.* at 28.

a mandatory minimum term of five years' imprisonment.[8] Ly's attorney ("Plea Counsel") stated at that hearing that he could not, at that moment, estimate what the Sentencing Guidelines range would be since Ly had "previous convictions that we're looking into," although he had advised Ly "that it's a minimum of five years and that we need to investigate at least one of his offenses to see how that would affect the guidelines."[9] The Government estimated that Ly's Sentencing Guidelines range would likely be 70 to 87 months' imprisonment.[10]

Ly understood, however, that if the actual Sentencing Guidelines range were different than any estimate provided, he would not be able to withdraw his guilty plea, and he understood that no one could guarantee what sentence he would receive from the Court.[11] Ly also understood that prior criminal convictions "may increase [his] guideline range."[12] The Court notified Ly that the Sentencing Guidelines range was "advisory only" and that the "Court has the authority to impose a sentence that is more severe or less severe than the sentence prescribes by the guidelines."[13] Finally, Ly confirmed that he understood he was waiving his right to a direct appeal.[14]

---

[8]   Doc. 83 at 9.
[9]   *Id.* at 10-11.
[10]  *Id.* at 11.
[11]  *Id.* at 11, 13.
[12]  *Id.* at 11.
[13]  *Id.* at 13.
[14]  *Id.* at 13.

The Court ultimately accepted the guilty plea, and a Presentence Report (PSR) was prepared.[15] The PSR noted that police found Ly in possession of firearms, at which time Ly agreed to a search of his residence.[16] During a search of Ly's residence, law enforcement discovered four firearms, ammunition, 75 grams of cocaine, Xanax, marijuana, Ecstasy, THC vape bottles, and narcotics packaging material.[17]

The PSR also detailed Ly's lengthy criminal history—a history that spanned his entire adult life.[18] These convictions include several minor offenses, as well as more serious crimes such as burglary and criminal conspiracy to commit burglary, possession with the intent to manufacture or deliver a counterfeit controlled substance under Pennsylvania state law, and possession with the intent to distribute controlled substances under Pennsylvania state law.[19] The two drug offenses formed the basis of a career offender enhancement, pursuant to *U.S. Sentencing Guidelines Manual* § 4B1.1 (2018).[20] Because the PSR determined that Ly was a career offender, it calculated a Sentencing Guidelines range of 262 to 327 months' imprisonment, in accordance with USSG § 4B1.1(c)(3).[21]

---

[15]   Docs. 63, 67.
[16]   Doc. 63 at 5.
[17]   *Id.*
[18]   *Id.* at 7-10.
[19]   *Id.*
[20]   *Id.* at 6.
[21]   *Id.* at 14.

At sentencing, Plea Counsel informed the Court that Ly had not previously seen the PSR, as the copy that Plea Counsel had mailed to Ly had been returned without delivery, and construction in the Courthouse had prevented Ly and Plea Counsel from meeting prior to the sentencing hearing.[22] The Court therefore stood in recess to provide Ly the opportunity to discuss the PSR with Plea Counsel.[23] Ly then confirmed that he had an opportunity to discuss the PSR with Plea Counsel, and there were no remaining issues or objections upon which the Court needed to rule before calculating the advisory Sentencing Guidelines range.[24]

This Court therefore calculated a Sentencing Guidelines range of 262 to 327 months' imprisonment.[25] Despite Plea Counsel's request for a downward variance, the Court imposed a within-Guidelines sentence of 262 months' imprisonment.[26] The Court determined that such a sentence was warranted based primarily on the seriousness of the offense, along with other factors.[27]

Ly thereafter filed a *pro se* notice of appeal with the United States Court of Appeals for the Third Circuit after Plea Counsel allegedly refused to file a notice of appeal on Ly's behalf.[28] On appeal, the Third Circuit appointed a new attorney for

---

[22]  Doc. 84 at 4.
[23]  *Id.* at 5-6.
[24]  *Id.* at 6-7.
[25]  *Id.* at 8.
[26]  *Id.* at 9-11, 21.
[27]  *Id.* at 19-21.
[28]  Doc. 78.

Ly.[29] However, the Government filed a motion to enforce the appellate waiver and summarily affirm Ly's conviction and sentence.[30] Over the opposition of Ly's newly-appointed counsel, the Third Circuit granted the motion, enforced the appellate waiver, and summarily affirmed Ly's conviction and sentence.[31] Ly did not file a petition for a writ of certiorari with the United States Supreme Court.

In 2022, Ly filed this timely 28 U.S.C. § 2255 motion challenging his conviction and sentence.[32] Ly raises three distinct claims. First, he asserts that he received ineffective assistance of counsel, as Plea Counsel: (1) did not meet with Ly in person prior to the change of plea hearing; (2) did not provide Ly with sufficient time to review the PSR; (3) misled Ly when Plea Counsel "fraudulently led [Ly] to believe that [the] sentence would be 70-87 months"; (4) failed to object to the career offender enhancement; and (5) failed to file a notice of appeal.[33] Second, Ly argues that his rights were violated by the failure to timely provide him with the PSR, which denied him the ability to object to the PSR and the career offender enhancement.[34]

---

[29]  Order Appointing Counsel, *United States v. Ly*, No. 21-2656 (3d Cir. Mar. 17, 2022, ECF No. 8).

[30]  Government's Motion to Dismiss Appeal, *United States v. Ly*, No. 21-2656 (3d Cir. Mar. 30, 2022, ECF No. 10).

[31]  Ly's Response, *United States v. Ly*, No. 21-2656 (3d Cir. Apr. 8, 2022, ECF No. 19); Order Granting Motion to Dismiss, *United States v. Ly*, No. 21-2656 (3d Cir. May 18, 2022, ECF No. 20).

[32]  Doc. 87.

[33]  *Id.* at 4. Ly also purports to raise a Sixth Amendment claim on the same grounds. *Id.* at 7. However, because Ly was represented by privately retained counsel, he was facially not denied his Sixth Amendment rights, and the Court analyzes these issues under the rubric of ineffective assistance of counsel.

[34]  *Id.* at 5.

6

Finally, Ly contends that the career offender enhancement was applied erroneously, as one of his convictions does not qualify as a controlled substance offense.[35] These claims may broadly be placed in three categories: issues with the change of plea, issues with sentencing, and issues with Ly's appeal.

The Government has responded to Ly's § 2255 motion and asserts that the motion is without merit.[36] The Government first argues that the plea agreement and its effects were fully explained to Ly, and counsel was not ineffective based on the erroneous estimated Sentencing Guidelines range offered during the change of plea hearing, since Plea Counsel did not offer that estimate and stated that Ly's prior convictions may alter the range, and Ly was informed that the Court could impose a more severe sentence if it wished.[37] Second, with regard to any issues surrounding the PSR, the Government maintains that Ly cannot establish prejudice, as his prior convictions qualify as predicate offenses sufficient to support the career offender enhancement.[38] Finally, the Government notes that Ly filed a *pro se* notice of appeal, was appointed counsel, and had his appeal dismissed, meaning that he suffered no prejudice from Plea Counsel's failure to file a notice of appeal.[39]

---

[35] *Id.* at 8.
[36] Doc. 97.
[37] *Id.* at 8-10.
[38] *Id.* at 10-13.
[39] *Id.* at 13-15.

Ly has filed a reply brief, rendering this matter ripe for disposition.[40] For the following reasons, the Court will deny Ly's motion.

## II.    DISCUSSION

"In *Strickland v. Washington,* 466 U.S. 668 (1984), the Supreme Court established a two-part test to evaluate ineffective assistance of counsel claims."[41] "The first part of the *Strickland* test requires 'showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'"[42] In determining whether an attorney's performance is deficient, courts must "determine whether, in light of all the circumstances, the [attorney's] acts or omissions were outside the wide range of professionally competent assistance."[43] As the United States Supreme Court has emphasized:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.[44]

"The second part [of the *Strickland* test] specifies that the defendant must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable

---

40  Doc. 98.
41  *United States v. Bui*, 795 F.3d 363, 366 (3d Cir. 2015).
42  *Id.* (quoting *Strickland*, 466 U.S. at 687).
43  *Strickland*, 466 U.S. at 690.
44  *Id.*

probability is a probability sufficient to undermine confidence in the outcome.'"[45] "This does not require a showing that counsel's actions more likely than not altered the outcome, but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters only in the rarest case. The likelihood of a different result must be substantial, not just conceivable."[46] "In the context of a guilty plea, the prejudice prong of the test requires a showing 'that there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial.'"[47]

### A.   Issues Related to Change of Plea

Ly first raises issues with the change of plea hearing, specifically, that his attorney did not meet with him prior to the change of plea hearing, did not provide Ly with sufficient time to review the PSR, and erroneously promised Ly a Sentencing Guidelines Range of 70 to 87 months' imprisonment.

As to Ly's contention that Plea Counsel "never went to see me at the prison" and Ly therefore "did not understand what I pleaded guilty to," the record belies such assertions.[48] Although this case largely proceeded during the worst pandemic in living memory—a pandemic that forced prisons to limit or stop in-person meetings altogether—the meeting records from Plea Counsel demonstrate that Plea

---

[45] *Bui*, 795 F.3d at 366 (quoting *Strickland*, 466 U.S. at 694).

[46] *Harrington v. Richter*, 562 U.S. 86, 111-12 (2011) (internal quotation marks omitted).

[47] *United States v. Fazio*, 795 F.3d 421, 426 (3d Cir. 2015) (quoting *Hill v. Lockhart,* 474 U.S. 52, 59 (1985)).

[48] Doc. 87 at 4.

Counsel and Ly spoke on four occasions prior to the change of plea hearing, and two scheduled conversations did not occur due to the prison failing to follow through with the planned conversation.[49] And at the change of plea hearing, Ly confirmed that he had discussed the case and the charges with Plea Counsel and was satisfied with his representation up to that time.[50]

Moreover, Ly's sworn statements at the change of plea hearing undermine any assertion that he did not fully understand the plea agreement. Again, Ly stated that he had discussed the case in general with Plea Counsel and, more specifically, affirmed that he understood the charge to which he was pleading guilty, along with the maximum punishments that could be levied against him, as well as the mandatory minimum sentence that he would face.[51] Importantly, during the change of plea hearing, the Court inquired whether Ly believed that Plea Counsel had "adequately explained the plea agreement to" him, and Ly replied in the affirmative.[52] After the Government summarized the major points of the plea agreement, Ly confirmed that the summary comported with his understanding of the plea agreement.[53]

---

[49]   Doc. 97-3.

[50]   Doc. 83 at 5. In light of this evidence, Ly's "self-serving and uncorroborated claims" that Plea Counsel did not meet with him is insufficient to carry his evidentiary burden of proving that plea counsel performed deficiently. *United States v. James*, 928 F.3d 247, 258-59 (3d Cir. 2019).

[51]   *Id.* at 5, 8-9.

[52]   *Id.* at 14.

[53]   *Id.* at 14-16.

Accordingly, the Court concludes that Ly understood the plea agreement, and that Plea Counsel did not perform deficiently in explaining the plea agreement to Ly.[54]

Turning then to Ly's assertion that Plea Counsel promised a Sentencing Guidelines range of 70 to 87 months' imprisonment, and that this promise induced Ly to plead guilty, the record again undermines his assertions.

Regardless of whether Plea Counsel performed deficiently in estimating—or rather, in failing to estimate—the range of sentence that Ly may receive,[55] the Court concludes that Ly cannot establish any prejudice. The Third Circuit has long held that "[w]hen addressing a guilty plea, counsel is required to give a defendant enough information to make a reasonably informed decision whether to accept a plea offer," which necessarily includes "the comparative sentence exposure between standing trial and accepting a plea offer."[56] "However, 'an erroneous sentencing prediction

---

[54]   Furthermore, because the Government explained the contents of the plea agreement in open court and Ly confirmed that the Government had accurately explained the terms of the plea agreement as Ly understood them, there would be no resulting prejudice from any purported deficient performance on Plea Counsel's part. *Id.* at 16.

[55]   The Court notes that Ly would have great difficulty establishing deficient performance. Plea Counsel did not actually offer an estimate at the change of plea hearing, but did specifically note that "Mr. Ly does have a—have previous convictions that we're looking into. But I have advised Mr. Ly that it's a minimum of five years and that we need to investigate at least one of his offenses to see how that would affect the guidelines." Doc. 83 at 10-11. This indicates that Plea Counsel understood that Ly's Sentencing Guidelines range may fluctuate depending on prior convictions, and that Plea Counsel could not yet definitively calculate the likely range. Additionally, to the extent that Ly asserts his attorney promised a shorter sentence than was imposed or a shorter Sentencing Guidelines range than was calculated, the change of plea colloquy confirms that this was not the case. During that colloquy, the Court asked Ly whether "anyone promise[d] or offer[ed] [him] anything aside from a written plea agreement in order to get [him] to plead guilty before the Court today," and Ly responded no. *Id.* at 17.

[56]   *United States v. Bui*, 795 F.3d 363, 367 (3d Cir. 2015).

by counsel is not ineffective assistance of counsel where an adequate plea hearing was conducted.'"[57]

> The Third Circuit has emphasized:

> all that the law requires is that the defendant be informed of his/her exposure in pleading guilty. The law does not require that a defendant be given a reasonably accurate "best guess" as to what his/her actual sentence will be; nor could it, given the vagaries and variables of each defendant's circumstances and offending behavior.[58]

Thus, where a court's plea colloquy accurately establishes the maximum term of imprisonment that the defendant faces, and advises the defendant that the court has the discretion to impose a sentence outside of the Sentencing Guidelines range and up to the statutory maximum term of imprisonment, a defendant suffers no prejudice from an erroneous sentencing prediction by his attorney.[59]

Here, both the plea agreement and the Court's plea colloquy informed Ly of these critical facts. Ly was informed that the charged offense carried a potential sentence of life imprisonment.[60] He was also informed that the Court was not bound by the Sentencing Guidelines range but was instead "free to impose upon the defendant any sentence up to and including the maximum sentence of imprisonment for life"[61] and had "the authority to impose a sentence that is more severe or less

---

[57]  *Id.* (quoting *United States v. Shedrick,* 493 F.3d 292, 299 (3d Cir. 2007) (brackets omitted)).
[58]  *Shedrick*, 493 F.3d at 299.
[59]  *Id.* at 299-300.
[60]  Doc. 54 at 1; Doc. 83 at 9.
[61]  Doc. 54 at 23; *see* Doc. 83 at 11-14, 17.

severe than the sentence prescribed by the guidelines."[62] Because the plea agreement and the plea colloquy that the Court conducted with Ly cured any potential prejudice from plea counsel's purportedly erroneous sentencing estimate, this claim of ineffective assistance of counsel fails.

### B.    Issues Related to Sentencing

Next, Ly asserts that he was prejudiced—and Plea Counsel was ineffective—because Ly did not timely receive the PSR and Plea Counsel did not file objections to the career offender enhancement. This claim fails because, even assuming Plea Counsel performed deficiently, Ly suffered no resulting prejudice, since his offenses qualify him for the career offender enhancement.

The PSR reveals that the two predicate offenses for which Ly was previously convicted were possession with the intent to manufacture or deliver a counterfeit controlled substance (those substances being Xanax and marijuana), and possession with the intent to distribute controlled substances (those substances being heroin and marijuana).[63] Ly argues that those offenses cannot support the career offender designation for two reasons.

First, Ly asserts that the Third Circuit's decision in *United States v. Nasir*, 17 F.4th 459, 472 (3d Cir. 2021), ruling that the Sentencing Guidelines' definition of controlled substance offense does not include inchoate offenses, means that his prior

---

[62]   Doc. 83 at 13; *see id.* at 11-13, 16.
[63]   Doc. 67 at 9-10.

convictions do not qualify as predicate offenses sufficient to support the career offender enhancement.[64]

However, as the Third Circuit elaborated in *Nasir*, "[a]n inchoate offense is a step toward the commission of another crime, the step itself being serious enough to merit punishment" and includes "for example, the attempt, conspiracy, or solicitation to commit a crime."[65] Possession with the intent to distribute is not merely a step toward the commission of an offense but is itself a completed offense and, accordingly, does not qualify as an inchoate offense.[66] *Nasir* therefore does not aid Ly.

Second, Ly contends that, because his underlying state court convictions involved marijuana, they do not qualify as predicate offenses, in accordance with *United States v. Miller*, 480 F. Supp. 3d 614, 616 (M.D. Pa. 2020).[67] In *Miller*, the Honorable Christopher C. Conner determined that a 2008 conviction "for possession with intent to deliver marijuana under Section 780-113(a)(30) sweeps more broadly than its federal counterpart and thus cannot qualify as a 'controlled substance offense" under the career offender provisions of the Sentencing Guidelines because, in 2018, federal law was amended to exclude hemp from the federal definition of

---

[64] Doc. 87 at 8.

[65] *Nasir*, 17 F.4th 459, 469 n.10 (brackets and internal quotation marks omitted).

[66] *See United States v. Livsey*, No. 20-2893, 2022 WL 1819093, at *2 n.3 (3d Cir. June 3, 2022) (noting that possession with the intent to distribute a controlled substance is not an inchoate offense).

[67] Doc. 87 at 5; Doc. 98 at 1-2.

marijuana whereas, in 2008, Pennsylvania law included hemp in the definition of marijuana.[68]

However, in January 2023 the Third Circuit in *United States v. Lewis* considered whether a New Jersey conviction for possession with the intent to distribute marijuana constituted a controlled substance offense for career offender purposes when, at the time of sentencing, federal law defined a marijuana offense more narrowly than did New Jersey—at the time New Jersey included hemp in its definition of marijuana, while federal law did not.[69] After analyzing the Sentencing Guidelines, that court determined that "a 'controlled substance' under § 4B1.2(b) of the United States Sentencing Guidelines is a drug regulated by either state or federal law. It is therefore irrelevant that the New Jersey statute under which [appellant] was convicted defined 'marijuana' more broadly than federal law."[70] In sum, the Third Circuit held that "[t]he meaning of 'controlled substance' as used in Guidelines § 4B1.2(b)'s definition of 'controlled substance offense' includes drugs regulated by state law at the time of the predicate state conviction, even if they are not federally regulated or are no longer regulated by the state at the time of the federal sentencing."[71]

---

[68]   *Miller*, 480 F. Supp. 3d at 624; *see id.* at 621.
[69]   58 F.4th 764, 766-67 (3d Cir. 2023).
[70]   *Id.* at 771.
[71]   *Id.*

That decision controls, and effectively abrogated Judge Conner's decision in *Miller*. Therefore, the mere fact that Ly's prior convictions involved marijuana does not mean that those offenses do not qualify as controlled substance offenses sufficient to support the career offender enhancement. To the contrary, the evidence firmly establishes that Ly is a career offender.

An individual qualifies as

> a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.[72]

The Sentencing Guidelines further define a "controlled substance offense" as any federal or state offense that is punishable by more than one year of imprisonment and "that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense."[73]

Here, Ly was over the age of 18 both at the time that he committed the instant offense and when he committed the state offenses, thereby satisfying the first requirement for the career offender enhancement.[74] Second, his crime of conviction,

---

[72] USSG § 4B1.1(a).
[73] *Id.* § 4B1.2(b).
[74] Doc. 67 at 9.

possession of firearms in furtherance of drug trafficking, qualifies as a controlled substance offense, as it is punishable by more than one year of imprisonment[75] and it relates to Ly's possession with the intent to distribute controlled substances, pursuant to 21 U.S.C. § 841(a)(1).[76]

And as to Ly's underlying state court convictions, both are controlled substance offenses. Ly's conviction for possession with the intent to manufacture or deliver a counterfeit controlled substance[77] involved marijuana, which is a Schedule I controlled substance under Pennsylvania law.[78] Because that offense involved a Schedule I controlled substance, Ly's conviction was punishable by a sentence of up to fifteen years' imprisonment.[79] Consequently, Ly was over the age of eighteen at the time of his conviction, the conviction involved a controlled substance, and was punishable by more than one year of imprisonment, meaning it is a controlled substance offense under the Sentencing Guidelines.[80]

---

[75]   *See* 21 U.S.C. § 924(c)(1)(A).

[76]   Doc. 19 at 1-2. *See United States v. Dawson*, 32 F.4th 254, 265 (3d Cir. 2022) (noting "the absurd proposition that § 841—marked out by Congress as *the* paradigmatic controlled substance statute—is *not* categorically a controlled substance offense under the Guidelines").

[77]   35 Pa. Stat. Ann. § 780-113(a)(30).

[78]   35 Pa. Stat. Ann. § 780-104(1)(iv).

[79]   35 Pa. Stat. Ann. § 780-113(f)(1).

[80]   Ly argues that he must have actually served more than one year in prison for the conviction to qualify as a predicate offense. Doc. 87 at 8. However, that it inaccurate. The underlying offense need only by "*punishable* by imprisonment for a term exceeding one year," Ly need not have *actually* served more than one year in prison. USSG § 4B1.2(b) (emphasis added). As the commentary to the Sentencing Guidelines elaborates, "'[p]rior felony conviction' means a prior adult federal or state conviction for an offense punishable by death or imprisonment for a term exceeding one year, regardless of whether such offense is specifically designated as a felony and regardless of the actual sentence imposed." USSG § 4B1.2 cmt. n. 1.

Similarly, Ly's conviction for possession with the intent to distribute a controlled substance[81] involved marijuana, which is a Schedule I controlled substance under Pennsylvania law, and cocaine, which is a Schedule II controlled substance.[82] Ly's conviction was therefore punishable by a sentence of up to fifteen years' imprisonment[83] and, indeed, Ly received an actual sentence of 42 to 84 months' imprisonment—well in excess of the threshold for a felony conviction.[84] This offense therefore likewise constituted a controlled substance offense.

Because Ly was more than eighteen years of age at the time he committed the offense of conviction, the offense of conviction was a controlled substance offense, and he had two prior felony convictions for a controlled substance offense, he is a career offender. Consequently, Ly suffered no prejudice from the failure to provide him with the PSR at an earlier date, or from Plea Counsel's failure to object to the career offender enhancement.[85]

### C.    Issues Related to Appeal

Finally, Ly claims that Plea Counsel was ineffective for failing to file a notice of appeal on Ly's behalf.[86] The Supreme Court of the United States has "long held that a lawyer who disregards specific instructions from the defendant to file a notice

---

[81]    35 Pa. Stat. Ann. § 780-113(a)(30).
[82]    35 Pa. Stat. Ann. § 780-104(1)(iv), (2)(i)(4).
[83]    35 Pa. Stat. Ann. § 780-113(f)(1).
[84]    Doc. 67 at 9.
[85]    To the extent that Ly attempts to raise a stand-alone challenge to the application of the career offender enhancement, Doc. 87 at 8, any such claim would fail, as Ly is a career offender.
[86]    Doc. 87 at 4.

of appeal acts in a manner that is professionally unreasonable."[87] Moreover, when an attorney fails to file a notice of appeal despite the client's request, a "presumption of prejudice applies despite an appeal waiver."[88]

Nevertheless, Ly's claim still fails, as the evidence overcomes any presumption of prejudice. The Supreme Court has noted that "to succeed in an ineffective-assistance claim in this context, a defendant need make only one showing: 'that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed.'"[89] Despite Plea Counsel's failure to file a notice of appeal, Ly was able to file a *pro se* notice of appeal on September 2, 2021, only eight days after judgment was imposed, and well within the period to appeal Ly's conviction and sentence.[90] Accordingly, Ly was able to file a timely notice of appeal, and he was not prejudiced by Plea Counsel's deficient performance.

Furthermore, on appeal, the Third Circuit appointed a new attorney for Ly.[91] After the Government filed a motion to enforce the appellate waiver and summarily affirm Ly's conviction and sentence, Ly's new attorney vigorously contested the motion.[92] The Third Circuit nevertheless granted the motion, enforced the appellate

---

[87] *Garza v. Idaho*, 139 S. Ct. 738, 746 (2019).
[88] *Id.* at 746-47.
[89] *Id.* at 747 (quoting *Roe v. Flores-Ortega*, 528 U.S. 470, 484 (2000)).
[90] Doc. 78.
[91] Order Appointing Counsel, *United States v. Ly*, No. 21-2656 (3d Cir. Mar. 17, 2022, ECF No. 8).
[92] Government's Motion to Dismiss Appeal, *United States v. Ly*, No. 21-2656 (3d Cir. Mar. 30, 2022, ECF No. 10); Ly's Response, *United States v. Ly*, No. 21-2656 (3d Cir. Apr. 8, 2022, ECF No. 19).

waiver, and summarily affirmed Ly's conviction and sentence.[93] Ly can therefore demonstrate no actual prejudice in the outcome of his appeal either. Consequently, this claim of ineffective assistance of counsel likewise fails.

### D. Certificate of Appealability

Because the Court will deny Ly's § 2255 motion, this decision is not appealable unless this Court or a circuit justice issues a certificate of appealability.[94] A certificate of appealability will not issue absent "a substantial showing of the denial of a constitutional right."[95] To satisfy this standard Ly must demonstrate that reasonable jurists would find that the Court's assessment of the constitutional claim is debatable or wrong.[96] The Court finds that Ly has not met this burden, and therefore declines to issue a certificate of appealability.

---

[93]   Order Granting Motion to Dismiss, *United States v. Ly*, No. 21-2656 (3d Cir. May 18, 2022, ECF No. 20).

[94]   28 U.S.C. § 2253(c)(1)(B).

[95]   *Id.* § 2253(c)(2).

[96]   *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003).

## III.    CONCLUSION

For the foregoing reasons, the Court concludes that Ly did not receive ineffective assistance of counsel, nor is there any other error in Ly's conviction and sentence that would require that either be vacated, and his 28 U.S.C. § 2255 motion will be denied. The Court will also deny a certificate of appealability.

An appropriate Order follows.


BY THE COURT:


*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge